HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMARA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MULTICARE HEALTH SYSTEM,<br>VAFA AFLATOONI, DEBRA PLANT,<br>JODY SMITH, DIANE CECCHETTINI,<br><br>　　　　　　Defendant. | CASE NO. 3:11-cv-6055-RBL<br><br>ORDER<br><br>[DKT. #19] |

THIS MATTER is before the court on Defendants MultiCare Health Systems, Vafa Aflatooni, and Debra Plant's Motion to Quash a Subpoena issued to Rite-Aid, a third party. (Dkt. #19.)  The underlying dispute involves civil rights and employment discrimination claims. MultiCare's pharmacy manager, Sunil Patel, hired Plaintiff Osama Emara.  While Emara worked at Multicare, Vafa Aflatooni was his supervisor and Debra Plant was his coworker.  Emara worked at MultiCare for less than three months.  He sued the Defendants after his termination, asserting claims under Title VII, REV. WASH. CODE 49.60.180, and common law.  Emara argues that he was terminated from MultiCare because of his race, religion, and/or national origin.

ORDER - 1

1    Emara's first discovery move was to subpoena the individual defendants' and Patel's
2 *former* employer, Rite Aid, for "[a]ll personnel information, personnel files, hiring, termination,
3 training, disciplinary actions and all corresponding communications" relating to the three
4 individuals.  Defendants move to quash, arguing (1) that they have standing because of the
5 personal rights and privileges to the documents sought, (2) that Rite Aid's personnel information
6 is not relevant to the claims involving MultiCare, and (3) that the subpoena is grossly overbroad
7 and invades the Defendants' reasonable privacy interests.  The Defendants have standing, and
8 the subpoenaed information is not relevant to Emara's claim.  Accordingly, the Court does not
9 address the Defendant's argument that the subpoena is overbroad.  For the reasons stated below,
10 the Motion to Quash [Dkt. #19] is GRANTED.

## I.    BACKGROUND

12    Emara is an Egyptian Muslim whose native language is Arabic.  He is a licensed
13 Pharmacist Intern in the State of Washington.  In the Summer of 2010, Sunil Patel hired Emara
14 to work in a MultiCare pharmacy.  According to Emara, Patel offered him a job as a "pharmacy
15 intern."  (Opp. to Mot. to Quash at 2.)  Emara's supervisor, Vafa Aflatooni, claims that Emara
16 was instead hired as a "pharmacy technician."[1]  (Aflatooni's Answer at 3.)
17    On August 7, 2010, Debra Plant sent Aflatooni an e-mail about Emara's job performance.
18 (Amended Compl. at 4.)  Plant believed that Emara was a pharmacy intern and she was
19 attempting to verify that he correctly tracked his intern hours.  (Amended Compl., Ex. A at 1.)
20 She also described an incident where Emara counseled a patient without her permission.  (*Id*. at
21 2.)  She expressed concern that he may have counseled the patient incorrectly and noted that the
22 patient seemed confused when contacted.  (*Id*.)  She also made it clear that she did not trust

---

[1] The parties have not clarified the distinction between "pharmacy intern" and "pharmacy technician" nor its importance.

1 | Emara, stating that she is "uncomfortable working with him, and feel[s] that [he is] dishonest and
2 | manipulative." (*Id*.)  Finally, Plant's email documented an incident where she overhead Emara
3 | discussing medications on the phone. (*Id*. at 3.)  When Plant asked Emara about the
4 | conversation, Emara responded that he was talking to his wife.  In her e-mail to Aflatooni, Plant
5 | stated, "I don't know who he was talking to for sure, but I believe he usually speaks to his wife
6 | in his native tongue." (*Id*. at 3.)

7 | Less than three months after being hired, and shortly after receiving Plaint's e-mail,
8 | Aflatooni dismissed Emara for engaging in activities outside the scope of his employment.
9 | According to Aflatooni, Plant's e-mail helped him finalize his decision to fire Emara.  According
10 | to Emara, he was terminated without any notice or prior warnings.  He alleges that Aflatooni did
11 | not conduct any independent investigation into Plant's accusations.

12 | On December 23, 2011, Emara sued MultiCare and other individually named defendants,
13 | including Aflatooni and Plant.  He did not name Patel.  Emara's Amended Complaint alleges
14 | eight claims: (1) termination in violation of Title VII; (2) termination in violation of Washington
15 | law; (3) discrimination in violation of Title VII; (4) defamation; (5) discrimination in violation of
16 | Washington law; (6) intentional inflection of emotional distress; (7) negligent infliction of
17 | emotional distress; and (8) conspiracy to interfere with civil rights. (Amended Compl.)

18 | On August 27, 2012, Emara notified the Defendants of his intent to serve a subpoena on
19 | Rite Aid for the employment documents of Plant, Aflatooni, and Patel.  Rite Aid is the former
20 | employer of all three persons and is not a party to the action.  Emara did not seek any
21 | preliminary or less intrusive discovery from the Defendants prior to the subpoena.  Defendants
22 | object to the subpoena on relevance and privacy grounds. The parties met and conferred by
23 | telephone, but were unable to resolve the discovery dispute.
24 |

Defendants move to quash, arguing (1) that they have standing because of the personal rights and privileges to the documents sought, (2) that Rite Aid's personal information is not relevant to the claims involving MultiCare, and (3) that the subpoena is grossly overbroad and invades the defendant's reasonable interest in privacy. Emara's opposition was late. He argues that the employment records will help him prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Defendants request that the Court disregard Emara's untimely brief. Although local rules allow the Court to consider a failure to file an opposition as an admission that the motion has merit, the Court has considered the opposition in order to decide the issue on the merits.

## II.  DISCUSSION

**A.  The Defendants Have Standing To Bring This Motion.**

Under Federal Rule of Civil Procedure 45, any party may serve a subpoena on a nonparty ordering the production of certain documents. FED. R. CIV. P. 45(a)(1)(A)(iii). A party lacks standing to challenge a subpoena issued to a third party unless the party making the challenge claims a personal right or privilege with respect to the discovery sought in the subpoena. *See Ericson v. Mircoaire Surgical Instruments LLC*, 2010 WL 1881946, *2 (W.D. Wash 2010); *Nova Products, Inc. v. Ksma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004). Here, Emara seeks extensive discovery of Plant, Aflatooni, and Patel's employment history at a prior employer. Plant and Aflatooni's personal right in their own employment history is sufficient to establish standing.

MultiCare asks the Court to recognize its standing on behalf of Patel, so that he does not have to intervene in the action to avoid "plaintiff fishing through his personnel records." (Mot. to Quash at 5.) MultiCare has a personal interest in making sure that its current employees, who

are not parties to the lawsuit against it, are protected from unwanted interference in their personal lives. This is especially true here because Patel's only known connection to the case is that he hired Emara. Emara does not claim that Patel discriminated against him, or participated in his allegedly wrongful termination. If MultiCare does not have a personal interest in protecting employees like Patel, then Emara could subpoena the prior employment records of every employee he encountered while working at MultiCare, and every employee would be required to intervene in the case in order to protect their privacy interests. MultiCare has sufficient interest to establish standing in this case.

### B. The Documents Requested Are Not Relevant.

Under Federal Rule of Civil Procedure 26(b), litigants may obtain discovery regarding "any non privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Because discovery is broad in scope and biased toward discovery, discovery requests need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. District courts enjoy broad discretion to determine relevancy for discovery purposes and to limit discovery to prevent its abuse. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Defendants argue that any employment record from Rite Aid is irrelevant because Emara has asserted individualized claims of discriminatory treatment relating solely from his termination at MultiCare. Emara responds that Plant's, Aflatooni's, and Patel's past discriminatory actions while working at Rite Aid are relevant and could be admissible to establish a motive, plan, intent, or knowledge. However, Emara fails to establish any basis for concluding that the requested employment records will contain any evidence of discriminatory behavior. A mere hope that the requested employment documents contain information that might prove to be relevant later at trial is insufficient.

1  Although the discovery rules are admittedly broad, they do not condone "fishing
2  expeditions."  As Defendants point out, this is Emara's first attempt to obtain any discovery in
3  this case.  He has not attempted to ask Defendants about their prior employment or establish any
4  reason for subpoenaing Rite Aid.  If Emara suspects that Plant, Aflatooni, and Patel have a
5  pattern of engaging in discriminatory behavior, he may ask various persons about their behavior
6  while working at Rite Aid.  Additionally, he may ask about Plant, Aflatooni, and Patel's prior
7  training regarding employment law and discrimination.  Although later discovery might establish
8  that the Rite Aid employment records are relevant, they are not relevant at this time.  On the
9  other hand, it is difficult to envision a situation in which Patel's prior employment documents
10 would be relevant. Patel is not a named defendant, and it appears that his only connection to the
11 case is that he hired Emara.

12 The Defendants' Motion to Quash [Dkt. #19] is GRANTED.

13 IT IS SO ORDERED.

14 Dated this 22nd day of October, 2012.

Ronald B. Leighton
United States District Judge